Habby Gr. Herman, S.
In this probate proceeding objections were filed by four brothers and two sisters of decedent and by two children of a sister who had predeceased the decedent. The objections alleged that the subscription by decedent was not genuine; that the propounded instrument was not executed in accordance with either the laws of Portugal, the place of execution, or with the laws of New York, the place of domicile; and *447 that the decedent lacked testamentary capacity. An objection to the effect that the purported instrument was neither the original nor a photostatic copy of the will of decedent was withdrawn.
The issues were tried by the court without a jury. At the trial the court received into evidence the depositions of a number of witnesses who were examined in Portugal pursuant to an open commission.
The evidence, satisfactorily established that the writing offered for probate was a photostatic copy of an instrument which had been admitted to probate in Portugal as the last will and testament of decedent. It was shown that the will of which the propounded instrument is a copy was a notarial will executed in the presence of two witnesses by entry in the official book of testaments which under the laws of Portugal included affixation of the fingerprint of the right index finger as a requisite. Testimony was received to show that under the laws of Portugal the notary is required to appraise the mental capacity of the testator, to ascertain his intentions, and reduce them to entries in a will book and cause the entries to be verified by each of the witnesses. It was shown that in order to contest a will under the laws of Portugal an action for that purpose must be instituted and the evidence adduced established that no such action had been commenced. It therefore satisfactorily appears that the original of the propounded instrument has been admitted to probate pursuant to the laws of Portugal and that the validity of such instrument has not been contested by the objectants in Portugal where all but one of them resides.
At the time of execution of the will decedent was approximately 62 years of age, a resident of Westchester County and was visiting his native land. By his will decedent purported to dispose of all his property, rights and securities, including those in America in favor of his wife who is described as his only and universal heir. The instrument was executed on October 14, 1958, more than one year prior to the death of decedent on November 19, 1959, and a few days after decedent was involved in an automobile accident which occurred on October 9,1958.
Immediately following the accident decedent was taken to a hospital in Pundao, Portugal. Upon arrival at the hospital he was found to be suffering from a scalp wound at the left parietal region with ligature of the temple muscle which required about 10 stitches, and an open wound in the right knee and the left shoulder. The low degree of traumatic shock from which he appeared to be suffering disappeared the following day.
*448 His wife to whom he was married in 1928 and who conducted the decedent’s restaurant business in Mamar oneek was notified of the accident and proceeded to Fundao arriving there on October 14, 1958. Upon her arrival at her husband’s bedside, they both signed wills leaving all their property to each other. This was accomplished by having a Dr. G-alhardo of Fundao, a notary public as he is described in Portugal, who maintained the official will book or book of public testaments, come to the decedent’s hospital room, where he discussed the terms and plans of the will. He then wrote the decedent’s will in this official will book (Book 18, p. 46) which the decedent signed together with Dr. G-alhardo and two additional witnesses, a Mr. Bravo, clerk in a Fundao law office, and a Mr. Nunes das Neves, attached to the hospital. The notary public also had the decedent impress his right index finger near his signature. The same procedure was employed as to the wife’s will which followed in the same will book. The decedent was discharged from the hospital on October 21,1958,12 days after the accident, and was treated for a short time thereafter by the same doctor who treated him in the hospital. He subsequently executed a deed before Dr. G-alhardo, transacted some other business involving his property in Portugal and returned to Mamaroneek at the end of 1958. His wife is the proponent of the will; there were no children of the marriage.
Upon the proponent’s motion, consented to by the object ants, an order was entered for an open commission before Dr. Alvano Salvado at Fundao, of the proponent’s witnesses, the aforesaid Dr. G-alhardo, Bravo and das Neves, relative to the execution of the instrument of October 14,1958, offered for probate herein, and of a Dr. de Moura as to the laws of Portugal with respect thereto, and of various other witnesses of both the proponent and the objectants as to the mental competence of the decedent at that time. These examinations took place in Fundao in March, 1961.
Both counsel attended at Fundao from March 13 to March 16 before Dr. Salvado who sat as a Commissioner and the witnesses were examined through an interpreter resulting in a voluminous examination that the court has examined, including a certification by the hospital as to the medicines administered to the patient, the decedent herein. The hospital record reflects the patient’s condition as described above, his admission on October 9, 1958 and his discharge on October 21, 1958.
As to the proponent’s witnesses, they testified that the decedent was rational, knew what he was doing and that as to the signing of the instrument, while he was in bed that he had turned *449 slightly on his left side to sign the instrument that had been written into the will book by Dr. Galhardo. In addition to the notary, Dr. Galhardo, and the witnesses, Bravo and das Neves, two attendants at the hospital, Martins and Coelho, testified as to the decedent’s awareness and understanding of what was going on and that he was not unconscious during his hospital stay.
The objectants called several witnesses, all of whom testified with a considerable degree of uniformity that, at their various visits to the hospital to see the decedent, he did not speak to them or anyone else, did not greet them and that he was covered with bandages and appeared not to recognize anyone. Each side called a handwriting expert who had different views as to the authenticity of the decedent’s signature.
There was some testimony that the deceased had quarrelled frequently with his wife, perhaps violently, and that his relationships with the other members of his family were considerably less than idyllic. Such situations are not unusual and these facts in this particular matter do not warrant any conclusions adverse to the probate (Coit v. Patchen, 77 N. Y. 533). Nor is illness or ill health standing alone sufficient to show lack of testamentary capacity (Matter of Brown, 143 Misc. 688; Matter of Silverman, 198 Misc. 274).
In view of the state of the record and the testimony of those witnesses present in the hospital on October 14, 1958 and an examination of the exhibits, there appears to this court that there is only one conclusion and that is that the decedent signed the will in the presence of the notary and the two witnesses in the official book of public testaments, affixing the fingerprint of his right index finger as required under the laws of Portugal. The witness, Dr. de Moura, an attorney called as an expert by the proponent at the taking of testimony in Fundao, established conclusively that the notary, in this case Dr. Galhardo, had to appraise the mental capacity of the maker of the will, ascertain the testator’s intentions and translate these into the writing that appears in the will book, and that all of this also had to be verified by each of the witnesses. He also stated that to contest a will in Portugal a lawsuit has to be initiated and that he had ascertained that no such lawsuit had been filed. It would therefore appear that the instrument in question remains uncontested in Portugal where all of the objectants, except one, reside.
The objections raised by respective counsel are subject to the rule that an ordinary witness may describe the acts of a person whose sanity is in question and then state whether those acts *450 impressed him at the time as rational or irrational, but he may not testify that the person was of sound or unsound mind, except in the case of a witness who was a subscribing witness to a will . (Holcomb v. Holcomb, 95 N. Y. 316). However, a subscribing witness to a will may testify to his opinion concerning the testamentary capacity of the testator as evidenced by his conduct at the time of executing the will, having been chosen by the testator for that purpose. (Matter of Coleman, 111 N. Y. 220.) The objections accordingly have been disposed of on the basis of these rules of evidence.
It satisfactorily appears that the will of which the propounded instrument is a copy was duly executed not only in accordance with the laws of Portugal but also in accordance with the provisions of section 21 of the Decedent Estate Law. The instrument was subscribed with the signature of the testator and his fingerprint was impressed thereon. The instrument was so subscribed in the presence of two witnesses and it must be inferred that each witness affixed his signature at the request of decedent. There can be no doubt that the instrument was duly published as required by the laws of New York, the instrument having been read aloud by one of the witnesses in the presence of the decedent and the other subscribing witness. Moreover, by the provisions of section 22-a of the Decedent Estate Law, it having been satisfactorily established that the instrument was executed in the mode prescribed by the laws of the place of execution the same must be deemed to have been legally executed and of the same force and effect as if executed in the mode prescribed by the laws of the State of New York.
Submit decree on notice admitting the instrument of October 14,1958 as the last will and testament of John Costa Nogueira, also known as Joao Costa Nogueira.